## SANCHEZ v. NATIONAL LIFE & ACCI-DENT INS. CO. OF NASHVILLE, TENN.

### No. 17099.

Court of Appeal of Louisiana. Orleans.

Feb. 10, 1941.

Rehearing Denied March 10, 1941.

See 1 So.2d 129.

Porteous, Johnson & Humphrey, of New Orleans (F. Carter Johnson, Jr., of New Orleans, of counsel), for appellant.

L. R. Hoover and Sidney C. Schoenberger, both of New Orleans, for appellee.

JANVIER, Judge.

Milton Sanchez brings this suit against National Life & Accident Insurance Company, Inc., seeking recovery of certain disability benefits under two health and accident insurance policies.

He alleges that on June 15, 1937, while in the employ of New Orleans Public Belt Railroad, he suffered an accidental injury —a severe strain—in attempting to lift one side of a box car wheel. He claims that, as a result, he was disabled for a period of 12 weeks. He further avers that, under the terms of the said policies, he is entitled to weekly disability benefits of $7.50 under one policy and $8 under the other. He also asserts that defendant was notified of his disability, but that, without just or reasonable ground, it refused to comply with its obligation under the said policies.

He prays for judgment in the sum of $186, representing 12 weeks' disability benefits at $15.50 per week, together with the penalties provided by Act 310 of 1910—that is to say, double the amount due under the terms of the policies, together with a reasonable attorney's fee, and he also prays for interest at 6 per cent. from judicial demand.

Defendant admits the issuance of the policies, but denies that plaintiff suffered any disability from injury, and asserts that

it refused payment on the recommendation of its physician, who examined plaintiff.

In a supplemental answer, defendant avers that, if plaintiff suffered any disability, it resulted from a venereal disease and. that, for such disability, there is no liability since the policies sued on provide that "no benefits will be paid for disability resulting from venereal diseases".

Defendant also resists payment on the ground that there was no external evidence of the injury as is required by the provisions of the policies.

The court below rendered judgment in favor of plaintiff in the sum of $93—disability benefits at $15.50 per week for 6 weeks. Defendant has appealed. Plaintiff has answered the appeal, praying that the judgment be increased to the amount prayed for, with the penalties provided, and plaintiff has also asked for 10 per cent. damages for frivolous appeal as authorized in certain instances by Art. 907 of the Code of Practice.

We will first consider whether plaintiff has sustained disability as the result of injury. It appears that, on the day alleged, while working for New Orleans Public Belt Railroad, plaintiff sustained a strain in attempting to raise the edge of a box car wheel. He reported this accident to the foreman, but found it possible to continue working. However, on the following morning, when he returned to work, the pain had increased to such an extent as to prevent his working. Dr. Menendez, the physician of the employer, examined him and found that he was suffering from a right lumbar sprain. After treatment for several days, this doctor discharged him on June 21, 1937, advising that he could return to work. He did not return, but, about a week later, consulted Dr. Letten, his physician, who found him suffering from a "lumbar sacral sprain". This doctor treated him for about 3 weeks. On July 29th, Dr. Butker, at the request of defendant company, examined plaintiff and advised rejection of his claim, reporting that he found no disability. He stated, however, that, though he found no evidence of the sprain, he realized that he had made the examination many weeks after the examinations had been made by the other two physicians.

Sanchez testified that he had been disabled for the full 12-week period for which he made claim.

So far as disability is concerned, we have no hesitation in stating that we find no manifest error with the finding of the trial court that there was disability for a period of 6 weeks, and we, therefore, hold that defendant's contention that plaintiff did not suffer disability from the injury is not well founded, and we now pass to the contention that plaintiff was suffering from venereal disease and therefore cannot recover because of the policy provisions quoted above.

There is in the record no evidence that plaintiff suffered from any venereal disease during the period covered by his disability claims. Several months after the accident he was admitted to the Charity Hospital and, on the trial of the case, the Charity Hospital reports were shown to Dr. Menendez, who stated that, from the general trend of these reports, it would appear that plaintiff had. at that time been suffering from venereal infection. However, Dr. Letten testified that at the time at which he examined Sanchez, in July, 1937, which was shortly after the accident, he had made an examination for gonorrhea and had found that there was no evidence of it.

It is evident, then, that if plaintiff had any venereal diseases which were discovered when he visited the Charity Hospital many weeks later, there is no evidence that they had been contracted during the period of disability, nor that the disability resulted from any such disease.

The only remaining defense is that there was no external evidence of accidental injury. This defense is based on a policy stipulation reading as follows: "Benefits will be paid for each day the Insured is by reason of illness necessarily confined to bed, and for each day that the Insured is by reason of accidental injury of which there is external evidence disabled from performing work of any nature."

At the trial, Dr. Menendez was asked the following question: "Q. Did you find any external evidence of a right lumbar sprain?" He answered: "No, he didn't have any external evidence but he had definite muscular rigidity on the right side."

There is also in evidence a claim blank filed by plaintiff with the defendant. On one side is a form to be filled in by a physician and on the reverse is a form labeled "Inspection Report". Dr. Menendez filled in the physician's form and in it he stated

182

that there was no external evidence of the accident. However, on the reverse side, which was filled in and signed by the superintendent of defendant company, there appears the following question: "Is there external evidence?" This question was answered "Yes". There then appeared the question: "If so, what?" And this superintendent of defendant company filled in the answer as follows: "Slight abrasion and back under strap bandage".

In 29 American Jurisprudence, page 710, section 937, we find the following: "In determining what is a visible mark of injury on a body, the term 'visible' is used in the broad sense of perceptible, discernible, clear, distinct, and evident."

We conclude that there was external evidence of the accidental injury within the meaning of the policy stipulations. Hence, plaintiff is entitled to recover disability benefits at the rate of $15.50 per week for a period of 6 weeks.

Act 310 of 1910 provides that payment by such companies as defendant shall not, without just and reasonable grounds, be delayed for a period longer than 30 days from due notice and proof of disability, and section 3 of this act provides that, where there is such delay without just and reasonable ground, the insurer shall pay to the insured, as a penalty, double the amount due under the terms of the policy, together with an attorney's fee to be fixed by the court. Plaintiff is entitled to these penalties since defendant's refusal to make payment under the circumstances was, we think, without just and reasonable ground. An attorney's fee of $25 is reasonable under the circumstances.

Plaintiff should not, however, be allowed 10 per cent. damages for frivolous appeal provided for by Art. 907 of the Code of Practice, since plaintiff, the appellee, also sought an amendment of the judgment of the lower court. The Supreme Court, in considering such a situation in Dennis v. Huber, 151 La. 589, 92 So. 126, 127, said: "In respect to plaintiff's demand for 10 per cent. damages based upon the contention that the appeal by defendant is frivolous, and hence that, under article 907 of the Code of Practice, he should be allowed such damages, it is sufficient to say that plaintiff has asked that the judgment be amended by allowing him 5 per cent. interest on the weekly installments. When the appellee asks that the judgment be amended, damages for a frivolous appeal will not be allowed. Mahan v. Michel, 27 La.Ann. 96."

See, also, Desblieux v. Darbonneaux, 2 Mart., N.S., 215, 217; Hood v. Knox, 8 La. Ann. 73; Gorham v. Hayden, 6 Rob. 450; and Whetstone v. Rawlins, 26 La.Ann. 474, 476.

Plaintiff has prayed for interest at 6 per cent. We find no justification in the contract, nor in law, for this, and therefore hold that he is entitled to legal interest only.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended and increased to the sum of $186, together with $25 attorney's fees, and with legal interest on the amount of the said judgment from judicial demand, and that, as thus amended, it be and it is affirmed, at the cost of defendant.

Affirmed.